# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHARLES SMITH, ) | |
| ) | |
| Plaintiff, ) | Case No. 09 C 2392 |
| ) | |
| v. ) | Magistrate Judge |
| ) | Martin C. Ashman |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion to Alter Judgment filed by the Commissioner of Social Security ("Commissioner") on October 4, 2010 pursuant to Fed. R. Civ. P. 59(e). The Commissioner asks the Court to alter that portion of its September 3, 2010 Order remanding this case to the administrative law judge ("ALJ") for further inquiry into the reasoning that supported the testimony of the vocational expert ("VE").

Federal Rule of Civil Procedure 59(e) states that motions to alter a final judgment "must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). The Rule's time limit is strictly construed, and courts have no authority to extend the twenty-eight day deadline. *See Hope v. United States*, 43 F.3d 1140, 1143 (7th Cir. 1994); *Western Industries, Inc. v. Newcor Canada Ltd.*, 709 F.2d 16, 17 (7th Cir. 1983). Final judgment was entered in this case on September 3, and Rule 59(e) required the Commissioner to file his Motion by October 1. As the Motion was filed on October 4, it is untimely and cannot be considered under the guidelines of Rule 59(e).

Nevertheless, a late-filed Rule 59(e) motion "automatically becomes a Rule 60(b) motion."[1] *Hope*, 43 F.3d at 1143. Federal Rule of Civil Procedure 60(b) allows a district court to award a party relief from judgment on five specific grounds, as well as "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Relief, however, is only available under "exceptional circumstances." *Helm v. Resolution Trust Corp.*, 84 F.3d 874, 877 (7th Cir. 1996) (citation omitted). After careful consideration of the Commissioner's argument and the administrative record, the Court finds that such circumstances do not exist in this case.

At the administrative hearing, the VE deviated from the Dictionary of Occupational Titles ("DOT") concerning the number of available jobs for Plaintiff. The VE estimated that there are 1,700 information clerks and 2,000 surveillance system monitors in the Chicago metropolitan area that are both unskilled and sedentary. In coming up with this figure, the VE explained that he took the Bureau of Labor Statistics data for all security personnel and for all information clerks and reduced each figure to five percent of the total number in order to account for only those positions that were unskilled and sedentary. According to the VE, these modifications were based on his personal knowledge and experience. Next, the ALJ asked the VE to consider the same physical RFC as before and an additional limitation requiring Plaintiff to work

---

[1] Although this Court has jurisdiction to consider the Commissioner's Motion, the Motion may not have tolled the Commissioner's time for appealing the Court's final judgment pursuant to Fed. R. App. P. 4(a)(1)(B). A timely-filed Rule 59(e) motion tolls the time period for filing a notice of appeal. Fed. R. App. P. 4(a)(4)(A)(iv). When a late-filed Rule 59(e) motion is construed as a properly-filed Rule 60(b) motion, the time period is not tolled even though a Rule 60(b) motion can be filed with the district court "within a reasonable time" for mistake, fraud, or new evidence, and within one year on other grounds. Fed. R. Civ. P. 60(c)(1). Despite this extended period, however, a Rule 60(b) motion only tolls the time for filing a notice of appeal if the motion is filed within twenty-eight days of the entry of final judgment. Fed. R. App. P. 4(a)(4)(A)(vi); *Hope*, 43 F.3d at 1143. In this case, the Commissioner's Motion was filed thirty-one days after final judgment was entered.

independently so as not to distract co-workers. The ALJ clarified that under this added restriction, Plaintiff could still have limited interaction with the public. The VE testified that Plaintiff could perform work as either an information clerk or surveillance system monitor, but the VE reduced his previously estimated figures by another ten percent and twenty percent, respectively. The Court found that the VE had not provided sufficient reasons for reaching his conclusions and remanded the case for further inquiry on this ground.

The Commissioner argues that the Court has imposed a duty on the VE that Plaintiff's own counsel did not raise at the hearing because counsel never sought the data supporting the VE's testimony. The record shows, however, that the attorney not only made such demands, she did so at some length: she asked for "a document that shows specifically those numbers" the VE relied on, asked whether the VE made personal reports or documents that backed up his claims, and objected "that there are no documentation that . . . shows that there is actual five percent." (R. 433-34.) When reminded by the ALJ that she had agreed to the VE's qualifications, the attorney responded: "I don't agree to any statistical qualifications and reductions in numbers, though. . . I don't agree that he has a statistical understanding to come up with five percent and then those subsequent numbers." (R. 434-35.) Contrary to the Commissioner's contention, therefore, it is not the case that Plaintiff failed to ask the VE for the facts supporting his conclusions, a demand the VE was required to answer under the Seventh Circuit's instruction that "the data and reasoning underlying that bottom line must be 'available on demand' if the claimant challenges the foundation of the vocational expert's opinions." *McKinnie v. Barnhart*, 368 F.3d 907, 911 (7th Cir. 2004) (quoting *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002)).

The Commissioner further argues that the VE in this case complied with *McKinnie* by stating that he relied on the Bureau of Labor Statistics to reach his conclusions. According to the Commissioner, Plaintiff erred by not requesting these specific data at the hearing. While it is true that Plaintiff did not request these publically-available government figures, the Labor Statistics were not the basis on which the VE reduced the number of the jobs available to Plaintiff. As the VE stated at the hearing, the Bureau of Labor Statistics do not provide for Plaintiff's individual restrictions. (R. 433.) It was the data supporting the reliability of the VE's job reductions based on these restrictions that Plaintiff sought but was not given. Moreover, *McKinnie* does not teach, as the Commissioner implies, that a VE is only required to provide data such as those listed in the Labor Statistics that form a part of his job calculations. The Seventh Circuit stated that the data supporting a VE's "bottom line" and "conclusions" must be disclosed if the claimant challenges the reliability of the VE's calculations. *Id.* ("If the basis of the vocational expert's conclusions is questioned at the hearing . . . then the ALJ should make an inquiry . . . to find out whether the purported expert's conclusions are reliable.") (quoting *Donahue*, 279 F.3d at 446)). Here, the Labor Statistics were the beginning of the VE's job estimates, not the basis for his bottom line.

The Court noted in its Order that the ALJ asked the VE how he reached his conclusions, and the Commissioner argues that this inquiry satisfies *McKinnie*'s disclosure requirement because the VE provided "detailed" evidence of his personal experience. The Commissioner correctly points out that the VE testified that he had formerly "placed people into sedentary security-related positions." (R. 434) Contrasting this with the VE in *McKinnie*, whose reliance on

"personal labor market surveys" was insufficient, *id.* at 909, the Commissioner argues that the VE's testimony in this case adequately responded to the ALJ's inquiry.

As the Court noted, however, the VE's testimony was far from detailed, consisting almost solely of the quote just stated and general references to his "experience and knowledge." (R. 433.) The Court further observes that the VE's testimony only involved placing people who required sedentary jobs in security positions and provided no specific testimony concerning his experience with placing information clerks. The Commissioner argues that the VE's responses were satisfactory because *McKinnie* does not prevent a VE from relying on government statistics or from drawing on his professional experience to give testimony. The Court fully agrees. For this reason, it did not question whether a VE can rely on his own experience or whether the VE in this case, in fact, had the personal expertise to reach his conclusions. The Court only found that the VE had not provided sufficient reasons for doing so under the facts presented.

A VE's data or reasoning must be "available on demand." *Id.* at 911. "In *McKinnie*, we held that the data underlying a VE's testimony was not 'available on demand' where the VE testified that her figures were based on government statistics and her own surveys but had not prepared a written report, did not bring any reference materials to the hearing, and could not provide citations to the materials to the hearing[.]" *Britton v. Astrue*, 521 F.3d 799, 803 (7th Cir. 2008) (citing *McKinnie*, 368 F.3d at 909)). The VE in this case also failed to produce, or even refer to, reports or documents at the hearing. The Commissioner has not shown how the VE's brief reference to his experience in placing people in security positions, combined with his failure to reference specific experience in placing candidates as information clerks, materially differs from the VE's reliance on labor market surveys in *McKinnie*.

Accordingly, the Court's ruling is not contrary to the Seventh Circuit's decision in *Donahue v. Barnhart, supra*, as the Commissioner argues. The Commissioner claims that the Court has overlooked *Donahue*'s admonition that an ALJ "must be entitled to accept testimony of a vocational expert whose experience and knowledge in a given situation exceeds that of the [DOT's] authors." *Donahue*, 279 F.3d at 446. The Court points out that this quote is immediately followed – and qualified – by a key question: "But when will this be true?" *Id.* The answer to this question involves the specific facts of a given case. As the Court's Order made clear, the relevant inquiry is not the legal question of whether or not an ALJ is entitled to rely on a VE's expert testimony based on his knowledge and experience. Clearly, an ALJ can do so – "provided that the underlying data and reasoning are available on demand." *Id.* The crucial issue is the factual question of whether such data and reasoning were actually provided by the VE when Plaintiff asked for them. The Court's decision was based on a finding that the VE did not do so under the facts presented in this case, and the Commissioner has not presented any record evidence that leads the Court to a different conclusion.

For these reasons, the Court finds that the Commissioner has not shown why exceptional circumstances are present in this case, *Helm*, 84 F.3d at 877, and the Rule 60(b) Motion is denied.

**ENTER ORDER:**

*[signature]*

MARTIN C. ASHMAN
United States Magistrate Judge

**Dated:** December 6, 2010.